The case set for argument this morning is United States v.Thompson. You may proceed. Good morning, I am pleased at the court. My name is James Riado. I represent Jeremy Thompson in this matter and I represented him in the case below. The only issue, we raised a few issues on the appeal regarding the procedural process that took place at the district court with the filing of the 851. I think the true issue here in terms of Mr. Thompson's perspective is whether or not the underlying conviction from 2002 based on the penal law, U.S. Penal Law 22013 sub 1, should be used to enhance him. Our position is obviously it should not. As this Court has held in other cases with Thompson, that particular section of law cannot be used to enhance sentencing. And that is simply our position here. Well, Thompson really concerned a particular interplay of statutes and we're dealing with a separate section of Title 21 here, right? No, this section that the government filed in the 851 was Penal Law 22031. Yes, but I'm talking about the whole interplay of federal and state law, right? And we're looking at a different federal law in Title 21, right, than we did in Thompson. We were looking at the Controlled Substances Act and comparing lists between the state and the federal. We're looking at a different kind of offense. Here we have a different statute they were trying to construe and reconcile with state law, right? Yes, ma'am, and I think you're 100% right. What our position is, is if the logic and the law and the decision made relevant to Thompson applies there, it should apply here for the 851 purposes. If the statute — Your point is that if the federal statute or the federal rule that we're comparing it to does not reach the behaviors or the conduct in the state statute in any respect, that we can't use the categorical approach. Correct. In other words, it shouldn't be used to enhance the federal — And you're saying that this particular substance, which is HGC, I think is the shorthand way of using it, is not covered within the four categories of the federal law. Correct, Your Honor. I think that's just one example. What we're saying essentially is that the New York law, the federal law is narrower than the New York law is broader. Right. So they couldn't be used. I think that was just one example. This is the example you're using. Precisely, correct. And the other side is saying that the felony drug offense refers to conduct that relating to narcotics drugs, marijuana, anabolic steroids, which is the real focal point here, and I guess one other, that this particular drug does relate to anabolic steroids because it could be used to address a side effect of anabolic steroids, which is to remedy a side effect of it, and therefore it relates to it. And your response is? Your Honor, I think that example is just one example. The law itself, the penal law itself, is just wider, and it's not the same as the federal statute. So because they're not the same, the government shouldn't be able to file a felony conviction based on a statute that shouldn't be included and that has been precluded because it doesn't match a federal statute. I think the HGC is just one example of that. But your argument is that relating should be interpreted to define conduct, conduct relating, and not to an expansion of the four categories of drugs that come after it. So the federal statute should include conduct relating to these drugs, whether the conduct be possession or distribution or conspiracy or whatever. And relating is not a term that should be used to expand the definition, for example, of steroids to include something that in some way, somehow relates to steroids, right? Exactly right, your Honor. I think that's exactly right. We shouldn't be expanding it. Rather, that particular penal law in New York does not fit the federal standard. So that conviction should not be able to be used to enhance them to a higher maximum. The information itself shouldn't have been filed. So the language of Section 802.44 that defines felony drug offense for these purposes is quite broad, right? So it's any federal or state or foreign law that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances, which is really quite just broad, I suppose. It embraces a lot, and it's remarkably, unlike the Controlled Substances Act, it's remarkably inspecific. And so just looking at a kind of plain language approach, felony drug offense to me would mean anything concerning a controlled substance, wherever controlled, that is punishable by over a year. So isn't that what the New York statute does? Well, it does, but I think it includes a wider group of substances that the federal government does not. So you think, again, we just have to compare the two controlled substances lists, and if there's any mismatch, that means we can't rely on any state conviction. We don't get to the relating. We don't get to that because we don't fit. And what about the judge's alternative reasoning that even applying the categorical approach, this works because the HCG ought to be considered analogous to an anabolic steroid, which I don't know much about chemistry. I understood it to be a hormone, and that is used by people who take anabolic steroids, but not necessarily an anabolic steroid. Should we have some fact-finding about that? I don't think you need to, Your Honor. I think that at least that was one example that we used to show the discrepancy between the statutes. There could be other ones. The fact that there is at least one is enough to show that they don't match. Well, but if it's not actually a discrepancy because it is ought to be treated as an anabolic steroid, it's encompassed within that rubric, why doesn't that satisfy, then, the categorical approach? Because I still don't think the elements of the New York statute will match the Federal statute. Are there other substances that are outside the Federal statute? At the time, there were, yes. And I think we, in our motion at least, we cited at least the one that we were aware of. You cited this one. Correct. So what others? The whole case boiled down to this one. You know, there's the controlled substances and the public health law in New York. There's thousands of them. We didn't do an element for element for Federal statute. I just want to. And, of course, they change so often. All the time. It's another flaw in this program. Right. The DEA is always subscribing. Correct. Yeah, yeah. So there may often be both deliberate and inadvertent mismatches. Sure, right. So the DEA can make a substance control, but New York may not follow. Yeah, yeah. A recent thing is the vaping. It was illegal under Federal, but under New York, it was fine. And this resulted for your client in an enhancement of how much? Five years. So his mandatory minimum went from 5 to 10. Yeah, yeah. Your argument, you don't really have an argument under 851, do you? I mean, that argument just collapses. Your argument is the judge shouldn't have considered the evidence indicating that this was cocaine because that was an improper interpretation of the statute for what the judge should have been doing. So we really don't get to that point after your first point. That's exactly right. We don't get to B because we didn't get past A. All right. Very good. I think we have the argument. We'll hear from the government. Good morning. May it please the Court. My name is Stephen Clymer. I represent the United States. Before beginning my argument, I'd like to clarify one point. At no point in this litigation did Mr. Thompson identify any substance in the New York State schedules that he claimed to be broader than the Federal law other than chorionic gonadotropin, HCG. And I know of no court decision that discusses this particular statute in New York schedules that has identified any other substance. So to my knowledge, and regarding the record below, this is the only substance at play for them. And we're looking as of what time? I believe that that substance was scheduled in the 1970s, Your Honor, but I may be wrong about that. I looked it up at one point to find the history, and my recollection is 1970. But the relevant time for purposes of sentencing. Oh, the offense conduct here was 2015 to 2016, I believe. Okay. Thank you. The critical issue here, I think, is this. Whether there's sufficient flexibility regarding this particular statute, 80244, in the Supreme Court's categorical approach doctrine to avoid an outcome that would be absurd. Could I? Yes. Could we all agree at the outset that you agree that we are bound by the categorical approach when we try to interpret the statute? I'm not arguing otherwise, Your Honor. Mr. The outcome Mr. Thompson seeks would be absurd for two reasons. The first is this. He would have his statutory sentencing range be dictated by a fact that has nothing to do with him, his offense, his criminal history, or his personal history. Isn't that just a consequence of the categorical approach? Isn't it the consequence of Townsend? I believe the answer is no, Your Honor, and that's what I'll get to. My argument is that the categorical approach has sufficient flexibility not to make that fact dictate the outcome here. The fact, of course, is New York State's decision at some point in the past to schedule this one esoteric substance that Mr. Thompson never saw, never touched. But it's precisely those discrepancies that have dictated the results in other applications of the categorical approach time and time again. I mean, that's one of the strange aspects of the categorical approach is that you get so far removed from what actually occurred. I believe that's the case, Your Honor, but I also believe that in a decision that I discussed in a 28-J letter I filed with the Court on Monday, Quarles v. United States, the Supreme Court, a unanimous court, I think clearly indicated that when applying the categorical approach, courts should not interpret Federal statutes to be self-defeating and they should exercise some flexibility and ask whether the State law, quote, substantially corresponds to that. Roberts. That wasn't a drug category approach, was it? I agree, Your Honor. It was an armed career criminal case, and the question there was how should a court interpret the term burglary? The issue of these odd drugs under State law that make State law broader than Federal law has never been a subject that the Supreme Court has said we have flexibility in that. The whole categorical approach is we don't look at what the drug was that was the substance of the underlying crime, and the Supreme Court has never said, well, you have flexibility to see if the drugs are close enough or whether the result of the statute is silly, because no one ever uses those drugs anyway. But what the Court does say in Quarles, Your Honor, and I believe it's applicable in all contexts, is the Court should not be using the categorical approach to read Federal statutes so that they're self-defeating. No, I understood, but if it's in the violence area, then there's always the question of can the crime be committed by less than violent conduct, and often there's speculation about that, right, because at a robbery situation where the guy doesn't actually forcibly take anything but may be blocked from leaving or something of that sort. And there's a lot of speculation about possibilities the defendants argue to us. But that doesn't – that's different from the drug situation, where it's much more technical and a question of comparing the statutes as opposed to something – as opposed to the violence area. But unlike the Townsend case, and Judge Carney pointed this out, this is not a case where the Federal statute at issue says controlled substance as defined in Section 802, Title V. It turns on the question of relating to here. And relating to four very broad categories. But one could also read the statute as having – relating to being regarding the conduct, not the drugs. And I agree with that, Your Honor. And what I would say about that is this. The conduct that is criminalized or restricted or prohibited by the State law here is not possession of this one drug or sale of this one drug. The conduct, because it's an individual – indivisible State statute, is the sale of a controlled substance. And so New York State has a group of controlled substances. That's the conduct that's prohibited by this State statute. And the Federal categories that are in the statute have general substances. And there's a 99.999 percent fit. That's good enough for relating to. But there is the discrepancy. And that can be significant. I mean, here, the district court, if I understood it correctly, in applying the categorical approach said, well, I think HCG is kind of like an anabolic steroid. So I'm going to consider it covered. That seems to me a factual determination that had an inadequate basis. I mean, I wouldn't know if that was true or not. You know, I've got to get on Wikipedia and figure out what we're talking about here. There was no factual finding. I don't think there was any evidence presented on this. And it's precisely that kind of discrepancy that has caused courts to reject the – you know, on the – fulfilling the categorical approach has caused courts to reject predicate State crimes as a good basis for – to amplify a sentence. And this is worth five years of someone's life. I understand that, Your Honor. The State statutes, for example, in Townsend, specifically hinge the determinant on whether there is a, quote, controlled substance, and as the Court interpreted in Townsend, under Federal law. So there's a list here and a list here, and the State substance doesn't qualify. There's no similar list here. There's general categories. The argument, as I understand it from the briefs, is that the four categories of drugs, including steroids, that are listed for the felony drug offense were all subdivisions of controlled substances that this Court dealt with in Townsend. That's not our position, Your Honor. Counsel asserted that in his brief. I know of no law or fact-finding that supports that assertion. In fact, if one looks at the statute, for example – Robertson, well, hold on. It's – so it's – you say it's not true that these four categories are included in the Federal definition of controlled substances that the Court dealt with in Townsend? I do not believe it's the case that to satisfy these four categories, a substance must be listed on the Federal schedules. The definitions of these drugs are sufficiently broad that a substance can qualify under one of these categories whether or not it is listed in the Federal controlled substance schedules. And I'll say this, Your Honor. If one looks at that definitional section, Title 21, Section 802, it has the definition of controlled substance. Congress, when it enacted 841, could have hinged that predicate on the words controlled substance. It chose not to do so. It chose instead to refer to these four very – Robertson, that's really not, I don't think, an argument in the briefs. I mean, there was – at least I didn't read the briefs as suggesting that HCG was in fact included in controlled substances that the – or rather that it was included in the four categories of a felony drug offense. And I'm not making that argument. I'm sorry. Maybe I was unclear. My point was different. My point is, and I thought I was responding to your question, the definition of controlled substances as listed on a schedule under Federal law is not necessarily exactly the same as the substances within those four categories in subsection 44. But that correlation is used in order to support the argument simply that HCG is not a substance that's included in the four categories of the felony drug offense. No quarrel, Judge. So – So then how are you – how do you prevail? Because the statute doesn't say relating only to these four categories. And our point is that if there is a State law that criminalizes a class of substances, a group of substances, or conduct involving a sale of a group of substances, and there's Federal law that covers 99.9 percent of those substances, the words relating to, especially if one looks at what the Court said – You mean we should read relating to as including but not limited to these four categories and kind of whatever else? We should not read it as relating only to. That's our position. You have no legislative basis for taking that position, do you? Other than the fact that the – Or what? That the legislature did not, number one, say controlled substances as defined in Title 21, Section 802. But you mean – so if somehow milk were suddenly made a controlled substance because it includes too many high hormone levels or whatever, and someone were prosecuted for selling milk, would that be included here? No, no, no. And that ought to be treated as a felony drug offense? No, it would not, Your Honor. And why not? Because the Supreme Court in Quarles said we should – you should look to see if it, quote, substantially corresponds to the Federal definition. And milk wouldn't substantially correspond because it's a widely-sold substance. In contrast, the substance here – It substantially corresponds in the – I'm going back. I'm sounding like a broken record. On the violence side of the question, as opposed to the drug side, is different. Here, the statute says, any law of the United States or state or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances. And I thought your argument was that because this HCG has some relationship to anabolic steroids, that it is covered. But I'm – now you seem to be making a different argument, a broader argument. We actually made two – both those arguments in our brief, Your Honor. The district court judge relied on the second – the one you mentioned, namely, that HCG is related to anabolic steroids. That argument is in our brief as well. All right. I don't think we have the argument. Thank you very much. Mr. Riotto, you have two minutes of rebuttal. Very good. Thank you. Thank you very much. We'll take the matter under advisement.